[L. A. No. 9983. In Bank.—July 1, 1929.]

EDWARD S. MORRIS, Appellant, v. PHIL WARNER, Respondent.

Murphy & Cohen for Appellant.

Fred S. Morrison and W. W. Hindman for Respondent.

SEAWELL, J.—Plaintiff, Edward S. Morris, and defendant, Phil Warner, entered into an agreement on July 28, 1922, whereby defendant leased industrial property in the city of Los Angeles to plaintiff for a term of five years, commencing on August 1, 1922, at an average monthly rental of $300. The premises, upon which was located a large frame building of rough construction, were to be used by the lessee for the purposes of manufacturing, storing and dealing in furniture. On December 25, 1923, the building was completely destroyed by fire. The lease contained the following provision, the alleged breach of which by the lessor is the basis of the cause of action set forth in plaintiff's complaint:

"If the building hereinbefore referred to is so badly damaged by fire, earthquake or other unusual action of the elements or any contingency beyond the control of the lessor, as to render it wholly unfit for lessee's occupancy, and if it cannot be restored with reasonable diligence within sixty (60) working days after the commencement of actual work, then this lease may be terminated within the period of ten (10) days after such disaster (by either party, upon written notice to the other), whereupon lessee shall surrender the premises and shall not be liable for any further rental, and lessor shall refund any unearned rent paid by lessee, calculated at a daily rate, based on the regular monthly rental. *In case of any lesser damage by any of the above causes, the premises shall be restored with all reasonable speed by the lessor at the latter's own expense,* and the lessee shall pay a reasonable rent during the period of such restoration, for such part of the premises as shall be fit for occupancy by the lessee . . . " (Italics supplied.)

In his complaint plaintiff alleged that the building was damaged by fire to the extent that it was entirely and wholly untenantable, but that a reasonable time for the restoration of the building was less than sixty working days, to wit, not in excess of fifty working days; that defendant refused plaintiff's demand that he restore and repair the building,

in accordance with the provision contained in the lease, and on December 31, 1923, said defendant served notice in writing on plaintiff that by reason of said fire he considered the lease terminated. Plaintiff claimed that by defendant's refusal to rebuild he was unlawfully evicted from said premises to his damage in the sum of $17,148.

Defendant, answering, denied that the building could be restored within sixty working days, and alleged that it would require considerably more than sixty working days to rebuild, and that he had notified plaintiff of the termination of the lease, as authorized by said contract of lease. He further denied that plaintiff had suffered damage in any sum whatsoever by reason of the termination of the lease. He also filed a cross-complaint in which he alleged that the fire was caused by the negligence of plaintiff and his violation of covenants in the lease whereby he agreed to keep said premises and all appurtenances thereto in a clean and wholesome condition and to comply faithfully with all ordinances of the city of Los Angeles. The city ordinance claimed to have been violated prescribed requirements designed to reduce the fire hazard to a minimum. The prayer of the cross-complaint was for damages for the value of said building, which was first alleged to be $18,000, and later by an amendment alleged to be $25,000.

The trial court, sitting without a jury, denied plaintiff any relief upon his complaint, and entered judgment for defendant and cross-complainant for $19,500. Plaintiff appeals from said judgment.

Considering first the cause of action set forth in the complaint, by the express terms of the lease defendant was not obligated to reconstruct the building unless it could be rebuilt within sixty working days after the commencement of actual work. Nor was defendant required to rebuild if the fire which destroyed the building was proximately caused by the negligence of the lessee. Neither the rebuilding clause nor the provisions of the lease to the effect that the lessee should keep said premises in good repair and condition at his own expense, *damage by fire or elements excepted,* and at the end of the term quit and surrender said premises to the lessor in good repair, *damage by fire* and ordinary use excepted, can reasonably be construed as relieving the lessee from liability to the lessor for a fire caused by his

own negligence or as requiring the lessor to rebuild in the event that the premises should be destroyed by a fire thus caused by the negligence of the lessee.

Defendant, however, does not rely upon negligence on the part of plaintiff as a defense in his answer, but only sets it forth in his cross-complaint as the basis for recovery of the value of the building. ██ Whether such negligence, found by the court to exist, would be available as a defense to the cause of action set forth in the complaint, although not pleaded in the answer, it is not necessary here to decide, for the court's finding that the building could not with reasonable diligence be rebuilt within sixty days, but that a period of seventy working days was a reasonable time for its restoration, is sustained by the evidence.

The building contained more than 24,000 square feet of floor space and was of frame construction, roughly finished. Portions of it were two stories in height. It was built upon cement piers or blocks so that the floor of the building and the exterior platform on the west side of the building were several feet above the ground in order to facilitate loading merchandise into freight-cars on the spur railroad track which adjoined the property on the west. Witnesses testified that approximately 600 cement piers would be required in reconstruction. Two witnesses, Gitelson and Pennell, builders, who testified on behalf of plaintiff, stated that the building could be rebuilt in forty working days, using reasonable diligence. The witnesses who testified on behalf of defendant gave estimates varying between seventy-three and eighty-five days. Said witnesses do not appear to have been lacking in qualifications to express an opinion, nor does their examination, in the course of which they were required to itemize the periods of time they deemed necessary for the accomplishment of the various phases of the reconstruction, contain anything which would require the trial court as a matter of law to reject their testimony and accept that of plaintiff's witnesses, who were not shown to have had any dealings with defendant or to have made any offers to him to rebuild in less than sixty days. No reason appears why the trial court should have accepted the testimony of plaintiff's two witnesses as against the testimony of the witnesses offered by the defendant. There

being a flat contradiction as to the issue of fact, we would not be justified in disturbing the court's finding.

We pass now to a consideration of the judgment entered for defendant upon his cross-complaint awarding him damages for the value of the building alleged to have been destroyed by fire caused by the negligence of his lessee, the plaintiff herein. Plaintiff contends that the cause of action set forth in the cross-complaint is not a proper subject of counterclaim or cross-complaint. We cannot agree with this view. Proof of a destruction caused by the negligent acts or omissions of the lessee would, as noted above, be a proper defense to the cause of action set forth in the complaint to recover damages for breach of the covenant to rebuild. It would also afford the lessor a cause of action for damages against the lessee. The question is, May said lessor recover herein upon such cause of action by cross-complaint or counterclaim? We are satisfied that he may. Although plaintiff's action is brought upon the lease contract, it is necessary to the existence of said cause of action that the building should have been destroyed by fire. Therefore, in a proper sense, the destruction of the building by fire is the "happening" or "accident" upon which the action is brought within the meaning of section 442 of the Code of Civil Procedure. The cause of action set forth in the cross-complaint or counterclaim to recover damages for the destruction of the building relates to and depends upon the same happening or accident. The destruction of the building by fire may also be considered as the "transaction" set forth in the complaint as the foundation of plaintiff's claim within the meaning of the language of section 438 of the Code of Civil Procedure, as said section read at the time of the filing of the pleadings herein, and defendant's cause of action, alleged in the cross-complaint, certainly arises out of said transaction. The negligent destruction of the building by plaintiff would be a bar to any damage or loss he might attempt to create by his own act of negligence, and plaintiff having brought an action to recover damages which have as a basis the destruction or loss of the building which his own negligence caused, the defendant, who is the legal sufferer, is unquestionably authorized by the provisions of section 442 of the Code of Civil Procedure to file a cross-complaint.

Furthermore, the acts of negligence relied upon by cross-complainant were violations of the lessee's covenants in the lease to keep said premises in a clean and wholesome condition and reasonably safe from destruction, and to comply faithfully with all ordinances of the city of Los Angeles. The action may well be considered as based upon the lessee's covenant in the lease "to hold the lessor and said premises harmless from any damages of any kind resulting from the misuse or neglect of said premises." In this view, the matter set forth in the pleading denominated a "cross-complaint" to the plaintiff's cause of action arising upon contract, is another cause of action arising upon contract within the meaning of subdivision 2 of section 438 of the Code of Civil Procedure, as well as under section 442 of the Code of Civil Procedure.

*Glide* v. *Kayser,* 142 Cal. 419 [76 Pac. 50], and *Meyer* v. *Quiggle,* 140 Cal. 495 [74 Pac. 40], relied upon by plaintiff, in which it was held that claims for monetary damages could not be recovered upon cross-complaint or counterclaim in actions for the recovery of possession of personal property and to quiet title to real property, respectively, for the reason that the relief sought would not affect, modify or change in any way the decree to which the plaintiff would be entitled, are not controlling here. In those cases two different types of relief were sought. But in the case here before us the prayer of both complaint and cross-complaint is for monetary damages. A money judgment upon a cross-complaint offset against a money judgment necessarily reduces the amount plaintiff may recover by the amount of the judgment upon the cross-complaint.

We do not agree with cross-defendant's contention that the court's finding that the building was totally destroyed by fire as a direct and proximate result of the carelessness and negligence of cross-defendant is unsupported by the evidence. Cross-complainant and witnesses who testified on his behalf, both employees and others, stated that plaintiff was accustomed to burn debris from his furniture factory, consisting of shavings, excelsior, sacks, bags, sawdust and other highly inflammable materials in the lot adjoining the leased premises on the west, and that said combustible materials were also scattered through the building in a disorderly fashion. The testimony of said witnesses indicates

that the fire was left unattended, smoldering and smoking, through all hours of the day and night on frequent occasions. An ordinance of the city of Los Angeles provided that it should be unlawful to burn rubbish, paper, shavings, boxes or other combustible materials in any lot in the district where the building was located except between the hours of 6 and 9 A. M. Cross-complainant and his witnesses also testified to having observed fire burning briskly in said rubbish pile on the afternoon of December 24th, the day before the fire, and on the 23d. Cross-complainant testified that he remonstrated with plaintiff concerning the maintenance of said fire and directed him to · extinguish it before leaving the premises on both December 23d and 24th and on other occasions in 1922 and 1923. The witness Trimble stated that he observed fire in the pile on the morning of December 25th. Said testimony, accepted by the court as true, will support a conclusion of negligence, and indicates a sufficient degree of probability that the fire destroying the building originated from the fire so negligently maintained on the vacant lot to support a judgment against cross-defendant. Witnesses for cross-defendant gave evidence that the premises were maintained in a condition that would not favor the spread of fire and that the burning rubbish pile was not so maintained as to constitute a fire menace. The court resolved the conflict in cross-complainant's favor. Nor can we accede to the view that cross-complainant had conferred a license upon his lessee to maintain the fire in the adjoining lot.

 Plaintiff contends that the judgment for cross-complainant for the full value of the building is excessive, for the reason that said cross-complainant, prior to the trial of the action, had collected $13,000 in fire insurance. Assuming, but not deciding, the correctness of this proposition of law, the point was raised for the first time upon the motion for a new trial. It appears from an affidavit filed by one of the attorneys for cross-complainant, in opposition to the motion for a new trial, that prior to the trial of the action plaintiff took the deposition of said defendant and cross-complainant and that therein defendant stated that he carried insurance on the building and that the insurance companies had adjusted the loss for him. Although plaintiff might upon the trial have compelled cross-complainant to

join the insurance companies paying the loss as either cross-complainants or cross-defendants (*Fairbanks* v. *San Francisco & N. P. Ry. Co.*, 115 Cal. 579 [47 Pac. 450] ; *Offer* v. *Superior Court*, 194 Cal. 114 [228 Pac. 11]), or, perhaps, in the absence of such joinder have limited plaintiff's recovery to the value of the building less the insurance, the pleadings and evidence are absolutely silent on the insurance feature. Having knowledge of the insurance and having failed to bring the matter to the court's attention during the trial in any manner whatsoever, plaintiff and cross-defendant cannot now claim that the trial court committed reversible error in refusing to grant a new trial by reason of the payment of said insurance. Aside from the concrete instance of notice that the building was insured, the common business practice of carrying fire insurance on buildings such as the one described in the evidence should have put plaintiff upon his inquiry as to whether insurance was carried on said building.

■ Petitioner also urges for the first time upon this appeal that it was improper to allow the cross-complainant to recover as damages the full value of the building destroyed for the reason that he was not the owner in fee thereof, but himself only a lessee, plaintiff being a sublessee. The cross-complaint contains an allegation that cross-complainant was the owner of the property. This allegation is nowhere controverted, and, hence, must be deemed to have been admitted. The court found said admitted allegation to be true. No evidence upon the question of ownership was introduced by either party upon the trial. In view of the admission made by the pleadings, the defendant and cross-complainant was not required to produce such evidence. The only indication that cross-complainant was not the owner is a reference in the lease executed prior in time between the parties, which was introduced in evidence as an exhibit, wherein it is recited that the lessor therein is a lessee, and the lease subject to the terms of the original lease. This intimation is entirely too weak to alter the decision in the case. Although cross-complainant may have been a lessee when he executed the lease in favor of cross-defendant in July, 1922, he may subsequently have acquired ownership in fee. There is no evidence contradicting such a contingency. Furthermore, we can readily conceive of situations where a lessor, himself the lessee of another, would be entitled to

recover from his lessee the value of a building destroyed, as, for example, where the sublessor had assumed liability to his lessor for the value of said building.

Appellant, on motion for new trial, offered a number of affidavits tending to show that the fire which destroyed the building started from within, rather than from without. We have examined said affidavits and find them, as doubtless did the trial court, lacking in impressiveness. No abuse of discretion is shown to have existed on the part of the trial court in denying the motion for a new trial.

Judgment affirmed.

Richards, J., Shenk, J., Curtis, J., and Waste, C. J., concurred.